533 S.E.2d 33

The ESTATE OF Hulda DAVIS, by
Its Executrix, Jerold A. CASEY,
Plaintiff Below, Appellant,

v.

FARMERS MUTUAL INSURANCE
COMPANY, a Corporation, De-
fendant Below, Appellee.

No. 26559.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 12, 2000.

Decided June 14, 2000.

Concurring Opinion of Justice
Starcher June 28, 2000.

Harry G. Shaffer, III, Esq., Anthony J. Cicconi, Esq., Shaffer & Shaffer, Charleston, West Virginia, Attorneys for Appellant.

David A. Sims, Esq., Debra Tedeschi Hall, Esq., Elkins, West Virginia, Attorneys for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on December 18, 1998. In that order, the circuit court entered summary judgment in favor of the appellee and defendant below, Farmers Mutual Insurance Company, in an action filed by the appellant and plaintiff below, the Estate of Hulda Davis by its Executrix, Jerold A. Casey, alleging breach of contract, fraud, bad faith, and unfair claims settlement practices related to the adjustment and settlement of a fire loss claim. In this appeal, the appellant contends that the circuit court improperly applied this Court's decision in *Yeager v. Farmers Mut. Ins. Co.*, 192 W.Va. 556, 453 S.E.2d 390 (1994), when it granted summary judgment in favor of the appellee.

This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. For the reasons set forth below, we reverse the final order of the circuit court and remand this case for further proceedings.

### I.

In 1988, Farmers Mutual Insurance Company (hereinafter "Farmers Mutual") issued an insurance policy to Hulda Davis on her property located in Mason County, West Virginia. The insurance policy contained limits of liability for the dwelling in the amount of $30,000.00. In July 1993, Ms. Davis requested that her policy limits be increased to $40,000.00. After a new application was completed, Farmers Mutual issued a new policy with liability limits of $40,000.00.

In March 1995, Ms. Davis' property was appraised for a loan application with the Twentieth Street Bank.[1] According to the bank's appraisal, the value of the home was $43,201.00, less $11,425.00 depreciation, for a net value of $31,776.00. A year after this appraisal was completed, Ms. Davis passed away. Subsequently, Jerold Casey, the Executrix of Ms. Davis' estate, informed Farmers Mutual that Ms. Davis' house would be tenant occupied. Ms. Casey requested that the insurance coverage on the house be increased. After consideration of the Twentieth Street Bank appraisal, Farmers Mutual issued a basic fire policy of insurance with limits of $50,000.00 for the dwelling and $20,000.00 for the contents.

Ten months later, on February 7, 1997, the home was totally destroyed by fire. After receiving notification of the fire loss, Art Meadows, an adjuster for Farmers Mutual, visited the home site and took a statement from Ms. Casey. Farmers Mutual also retained Donald Sturm, an appraiser, to determine the actual cash value of the house immediately prior to the fire. On February 28, 1997, Mr. Sturm submitted his appraisal report which valued the property at $28,155.00.

After further investigation, Farmers Mutual made a settlement offer, by letter dated March 13, 1997, to Ms. Casey. The offer consisted of payment of $30,000.00 for the dwelling and $3,883.00 for the contents of the home at the time of the fire including $1,050.00 for debris removal. Ms. Casey accepted this offer on behalf of the estate[2] and executed a Release of All Claims wherein she

---

**1.** Based on this appraisal, Ms. Davis procured a loan from the Twentieth Street Bank, and it was added to the Farmers Mutual policy as a mortgagee in July 1995.

**2.** As a condition of the settlement, Ms. Casey requested that Farmers Mutual issue a separate check directly to the Twentieth Street Bank to pay off the mortgage on the property. Accordingly, Farmers Mutual issued a check in the amount of $8,184.42 to the Twentieth Street Bank and a check in the amount of $26,648.58 to the Estate of Hulda Davis.

released and forever discharged Farmers Mutual for all claims arising out of the fire that occurred at Ms. Davis' property on February 7, 1997.

Approximately one year later, Ms. Casey, on behalf of Ms. Davis' estate, filed suit against Farmers Mutual in the Circuit Court of Kanawha County alleging breach of contract, fraud, bad faith, and unfair claims settlement practices. She further alleged that Farmers Mutual exhibited a pattern or practice of deceiving policy holders who had suffered a total loss by fire and thus, sought to bring the action on behalf of Ms. Davis' estate and the entire class of persons similarly situated. After discovery was completed, Farmers Mutual filed a motion for summary judgment. In response, Ms. Casey filed a motion for leave to amend her complaint as well as a cross motion for summary judgment. On December 18, 1998, the circuit court granted Farmers Mutual's motion for summary judgment. This appeal followed.

## II.

■ On numerous occasions, we have stated that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna*

*Casualty and Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

■ As noted above, Ms. Casey argues that the circuit court misapplied this Court's decision in *Yeager v. Farmers Mut. Ins. Co.*, 192 W.Va. 556, 453 S.E.2d 390 (1994), and therefore, erred by granting summary judgment in favor of Farmers Mutual. In *Yeager*, this Court found that W.Va.Code § 33–17–9 (1957),[3] known as the valued policy law, does not apply to farmers' mutual fire insurance companies. As we explained in Syllabus Point 1 of *Yeager*,

> W.Va.Code, 33–17–9 (1957), referred to as the valued policy law, does not apply to farmers' mutual fire insurance companies. The legislature clearly indicated such companies are exempt by its enactment of W.Va.Code, 33–22–7(c) (1957).[4]

■ Ms. Casey acknowledges that the valued policy law does not apply to her fire loss claim. However, she asserts that Farmers' Mutual intentionally misrepresented the method by which actual cash value is to be determined in total loss claims. In Syllabus Point 2 of *Yeager*, this Court stated that:

> If a farmers' mutual fire insurance company and its insured cannot agree on the actual cash value for a total loss of the insured property, the burden of proof rests

---

**3.** W.Va.Code § 33–17–9 (1957) provides:

All insurers issuing policies providing fire insurance on real property situate in West Virginia, shall be liable, in case of total loss by fire or otherwise, as stated in the policy, for the whole amount of insurance stated in the policy, upon such real property; and in case of partial loss by fire or otherwise, as aforesaid, of the real property insured, the liability shall be for the total amount of such partial loss, not to exceed the whole amount of insurance upon such real property as stated in the policy. This section shall not apply where such insurance has been procured from two or more insurers covering the same interest in such real property.

**4.** The Legislature limited the liability of farmers' mutual fire insurance companies by stating in W.Va.Code § 33–22–7(c) (1957), that "[p]olicies

may limit the liability of the [farmers mutual fire insurance] company to a fixed percent of the value of the property insured." As we explained in *Yeager*, although the Legislature made major revisions to the entire insurance section of the Code in 1957, it retained the limited liability language for farmers' mutual fire insurance companies. 192 W.Va. at 559, 453 S.E.2d at 393. In fact, the applicable statutory provisions have remained unchanged since 1929. *Davis v. Safe Ins. Co.*, 120 W.Va. 505, 512, 199 S.E. 364, 367 (1938). "'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syllabus Point 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997).

on the party who seeks to show an amount different than the value stated on the policy. This decision does not prevent a farmers' mutual fire insurance company from placing a limit on the amount paid under the policy.

■ In this case, after the fire loss was reported, Farmers' Mutual retained an appraiser to determine the value of the house just prior to the fire. The appraiser reported that the house had a value of $28,155.00, which was similar to the appraisal that was performed two years earlier when Ms. Davis sought a bank loan. Thereafter, Farmers Mutual offered approximately $33,000.00 to settle the claim.

Ms. Casey essentially argues that Farmers Mutual could not rely on these appraisals but instead, had the burden of establishing that the actual cash value of the property had been diminished by physical depreciation between the date the policy was issued and the date of the fire loss. In this regard, Ms. Casey relies upon the following language from *Yeager:*

> Upon review, we affirm this statement with regard to who bears the burden of proof if a party seeks to establish a different value than what is stated on the policy. *See generally* 21 John A. Appleman and Jean Appleman, *Insurance Law and Practice* § 12233 at 261 (1980) ("[t]he insurer has the burden of establishing that the estimated value of the property insured had been diminished by physical depreciation between the date of the policy and the date of the fire loss." (Footnote omitted)). We find our adoption of this burden of proof will help prevent the overvaluation of property.

192 W.Va. at 560, 453 S.E.2d at 394. Ms. Casey asserts that Farmers Mutual intentionally misrepresented the method by which actual cash value is to be determined in total losses and that this act constitutes bad faith. Ms. Casey further argues that Farmers Mutual's statement that "we have a right to settle claim for the house and contents on an actual cash value basis" was false and fraudu-

lent in light of *Yeager* and such statement influenced her decision to settle the case.

In response, Farmers Mutual asserts that it followed this Court's decision in *Yeager* in adjusting this claim by hiring an independent appraiser to assess the value of the home prior to the fire. It also considered the appraisal previously performed in connection with an application for a bank loan by Ms. Davis. In considering these appraisals, Farmers Mutual maintains that it followed the law set forth in *Yeager* relating to the actual cash value of the home and therefore, met its burden of proof. Farmers Mutual claims that Ms. Casey offered no proof of the value of the home. In addition, she testified that she understood the settlement and release and that she settled the case because she thought that her brother might have been involved in setting the fire.[5] Farmers Mutual notes that the settlement offer was made after a full investigation of the claim and just five weeks after the fire occurred.

After a thorough review of the record, we find that the circuit court erred by granting summary judgment in this case. In *Yeager,* which incidentally involved the same insurance company that is the appellee and defendant below in this case, we noted that:

> "[A]n agreement as to value as of the date of the policy is not, strictly speaking, evidence of the amount of loss weeks or months later; but it is an agreement with respect to the value of the property insured which will carry through the life of the contract, unless a change in value is shown; and the burden of showing such change is on him who would profit thereby."

192 W.Va. at 560, 453 S.E.2d at 394, *quoting Davis v. Safe Ins. Co.,* 120 W.Va. 505, 510, 199 S.E. 364, 366 (1938). Clearly, there are genuine issues of material fact in this case that need to be resolved by a jury. In particular, there are questions of fact relating to the circumstances surrounding the settlement offer and whether there was an agreement between the parties as to the actual cash value of the insured property. Accordingly, the final order of the Circuit Court of Kanawha County entered on De-

---

**5.** Farmers Mutual's cause and origin expert determined that the fire was incendiary.

cember 18, 1998, is reversed, and this case is remanded for further proceedings.

Reversed and remanded.

STARCHER, Justice, concurring:

(Filed June 28, 2000)

It is a basic fact of life that when most people buy a home, they also buy homeowner's insurance to protect against certain types of losses. The policy usually says something to the effect that the insurance company will pay the policyholder the "actual cash value" of the loss. However, the policy usually also has a "cap" or a total value, a figure which is the maximum amount of money that the insurance company will pay on the policy.

Insurance companies are prone to mischief, particularly when it comes to paying the "actual cash value" of a loss, and this case is a perfect example. In yesteryear, a policyholder would pay actual cash for a house, and then buy an insurance policy with a value equal to the value of the house, and would use actual cash to pay the premiums. When the house burned to the ground, an insurance adjuster would look at the smoldering debris, calculate the "actual cash value" of the house that was destroyed, and scribble out a check—usually for an amount far less than the value of the policy. The policyholder paid for coverage equal to the value of the house, only to learn after a catastrophe that most of the coverage was illusory through the use and abuse of the "actual cash value" concept.

The Legislature recognized this disreputable practice and fixed the problem with *W.Va.Code*, 33–17–9 [1957], the "valued policy law." This statute states that when real property is totally destroyed by fire or some other cause covered by the insurance policy, the insurance company must pay "the whole amount of insurance stated in the policy." This prevents the insurance company from overvaluing the insured structure for premium purposes, collecting an excess premium, and then later contesting the value of the structure when there is a loss. *See, e.g., Filiatreau v. Allstate Ins. Co.*, 178 W.Va. 268, 358 S.E.2d 829 (1987).

However, the Legislature afforded different treatment for farmers' mutual fire insurance companies. In *Yeager v. Farmers Mutual Insurance Co.*, 192 W.Va. 556, 453 S.E.2d 390 (1994), this Court acknowledged that the "valued policy law" does not apply to farmers' mutual fire insurance companies, because the Legislature specifically exempted farmers' mutual fire insurance companies from the operation of the valued policy law by enacting *W.Va.Code*, 33–22–7(c) [1957].[1]

Our holding in *Yeager*, however, did not mean that farmers' mutual fire insurance companies could revert to pre-valued-policy-law tactics of yesteryear. In *Yeager* we made clear that the farmers' mutual fire insurance company bears the burden of inspecting the policyholder's property before issuing a policy, and that the value of the policy should reflect the *actual* pre-loss value of the property. We also held in *Yeager* that the "agreement as to value as of the date of the policy ... is an agreement with respect to the value of the property insured which will carry through the life of the contract[.]" 192 W.Va. at 560, 453 S.E.2d at 394, *quoting Davis v. Safe Insurance Co.*, 120 W.Va. 505, 510, 199 S.E. 364, 366 (1938).

Furthermore, when an insured property is totally destroyed, the farmers' mutual fire insurance company must pay the value of the policy, or must introduce substantial proof to show that some intervening factor (besides time or cosmetic wear and tear) reduced the value of the property below the pre-loss agreed value of the property.[2]

In other words, an insurance adjuster for a farmers' mutual fire insurance company cannot come in, after a fire has destroyed the

---

**1.** In today's world of insurance, I question the continued need for such a distinction between farmers' mutual fire insurance companies and all other insurance companies. Perhaps the Legislature should revisit this statute.

**2.** By "substantial," I mean substantial, not nickel-and-dime cosmetic damage. Houses constantly sustain wear-and-tear damage: paint weathers, shingles wear, floorboards work loose and

squeak. Bad neighbors move in and don't care for their own houses, hurting the value of the policyholder's home. No homeowner could possibly maintain their home or their neighbors' homes in perfect condition, and no insurance company could reasonably expect the same. Therefore, when the homeowner and farmers' mutual fire insurance company agree to the value of the home, the insurance company cannot

property, and place a different "actual cash value" on the house that is less than the amount agreed to in the policy. The farmers' mutual fire insurance company must either pay the value of the policy, or come up with some hard evidence to show how the property has significantly dropped below the value of the policy.

In the instant case, the plaintiffs and the farmers' mutual fire insurance company agreed in March 1995 that the house was worth $50,000. Ten months later the house burned, and an insurance adjuster said the house had an actual cash value of only $28,-155, in complete and total disregard for our holding in *Yeager*. The farmers' mutual fire insurance company knew of our holding in *Yeager* because it was the defendant in *Yeager*, yet intentionally disregarded the holding and stiffed the policyholder for $20,000 in actual cash.

I am therefore in full agreement with the majority's application of *Yeager* to this case to rectify this injustice. I concur.

after a loss occurs "depreciate" the value of the home for such routine wear-and-tear.

Furthermore, every few months or year, when the policyholder and farmers' mutual fire insurance company renew the policy, the insurance company has a new opportunity to examine the home and reassess the value of the policy and the value of the house. Hence, the insurance company cannot sell a policy today, and when the house burns down in 15 years, calculate how much the value of the home has decreased over 15 years. It can only make deductions from the value of the house agreed upon on the date the policy was last renewed—usually only a few months prior to the loss. In the instant case, the loss occurred 10 months after the policy was renewed.