575 S.E.2d 199

**Georgia POLING, Jessica Poling and Deidre Poling, Plaintiffs Below, Appellants,**

v.

**PRE–PAID LEGAL SERVICES, INC., a corporation, and John A. Farmer, Defendants Below, Appellees.**

No. 30525.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2002.

Decided Nov. 27, 2002.

Jane E. Peak, Allan N. Karlin, Sophie E. Zdatny, Allan N. Karlin & Associates, Morgantown, West Virginia, for the Appellants.

Elisabeth H. Rose, Rose, Padden & Petty, Fairmont, West Virginia, for the Appellee.

PER CURIAM.

'This is an appeal by Georgia Poling, Jessica Poling, and Deidre Poling (hereinafter "the Polings" or "Appellants") from an order of the Circuit Court of Monongalia County granting summary judgment in favor of Pre–Paid Legal Services, Inc., and John A. Farmer (hereinafter "Appellees") on fraud and breach of contract claims initiated by the Appellants. Upon review of the record, briefs, and arguments of counsel, we reverse the final order of the circuit court and remand this case for further proceedings consistent with this opinion.

## I. Facts

Appellant Georgia Poling purchased a membership[1] from Appellee Pre–Paid Legal

---

1. When purchasing the membership, Mrs. Poling also became a sales associate, capable of offering Pre–Paid memberships to third parties. Sales associates sell memberships through in-person solicitation and are provided with brochures and training materials for training and for the purpose of explaining the program to potential purchasers. When the Appellant did not initially address her status as a sales associate in her brief, Pre–Paid emphasized in its response that

Services, Inc., a legal services plan provider, in May 1995.[2] Mrs. Poling asserts that the advertising materials upon which she relied in choosing the Pre–Paid legal services plan claimed that legal services would be provided by highly respected attorneys to be monitored and evaluated by Pre–Paid.[3] Mrs. Poling's participation in the program was solicited by Ruth Bucklew, a friend of Mrs. Poling and a trained Pre–Paid sales associate representative, via an in-person visitation. After the membership is purchased and fees of $16.00 monthly have been paid, the member is sent a form document that Pre–Paid now references as the "contract." Mrs. Poling contends that she was not advised that she would receive such a document or that it would contain any information which might negate or contradict any representations made to her at the time of her solicitation and entry into the Pre–Paid program. Further, Pre–Paid did not request that Mrs. Poling sign this document. Particularly relevant to the inquiry in the present case, it is important to note that the document does not include any representa-

tions regarding attorney quality, such as the representations originally made to induce Mrs. Poling to join. Nor does it contain any language to disclaim or disavow the representations regarding selection of attorneys originally made to consumers to induce them to join.

On September 13, 1995, Georgia Poling and her minor daughters, Jessica and Deidre, were involved in an automobile accident. Mrs. Poling suffered a cervical injury allegedly causing a nine percent whole body impairment. Mrs. Poling was thereafter approached by the other driver's insurance company and asked to sign a release. Recognizing that she required legal assistance, Mrs. Poling contacted Pre–Paid Legal Services, Inc., and she was referred to Appellee John Farmer for a legal conference.

Mrs. Poling conferred with Mr. Farmer in September 1995 regarding the possibility of pursuing a cause of action against the allegedly negligent driver, and Mrs. Poling signed a contingency fee agreement with Mr. Farmer's Clarksburg, West Virginia, law firm,

Mrs. Poling did indeed have the status as a sales associate. In her reply brief, the Appellant stated: "Without explaining why it feels the fact is important, Pre–Paid points out that Georgia Poling was a Pre–Paid sales associate in addition to being a member." The Appellant further expresses the contention that such fact actually bolsters her reliance claim. She explains: "Yet, the only obvious import of the fact is that it increases the likelihood that Georgia Poling was shown the sales training materials and believed and relied on Pre–Paid's representations." Upon review, we believe that Mrs. Poling's status as a sales associate would only serve to heighten both her opportunity and her reason to be familiar with the assurances contained in literature disseminated by Pre–Paid.

**2.** Pre–Paid is not regulated by the West Virginia Insurance Commissioner. Thus, there is no oversight of its sales practices or review of its contracts through the Insurance Commissioner. West Virginia Code § 33–1–1 (1957) (Repl.Vol. 2000) states: "Insurance is a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." We note that the West Virginia Attorney General stated in a November 29, 1977, opinion that another form of pre-paid legal services did not constitute insurance. We further note that pre-paid legal services are not included in the inventory of insurance contracts enumerated in West Virginia Code § 33–1–10. However, these

statutorily enumerated types of insurance contracts do not appear to be exhaustive. In other states, it appears that the insurance commissioner or agency responsible for insurance has made the initial determination as to whether a given pre-paid legal services plan constitutes insurance. *See generally LegalClub.com, Inc. v. Department of Consumer and Business Services*, 182 Or.App. 494, 50 P.3d 1196 (2002); Wayne F. Foster, Annotation, *Prepaid Legal Services Plans*, 93 A.L.R.3d 199 (1979).

**3.** Pre–Paid issued a 1993 brochure and sales training materials indicating that the chosen attorneys would be "highly respected" and would be subject to "rigorous screening," "continuous monitoring," and "evaluation." The 1995 brochures and training materials eliminated these extensive promises. While Mrs. Poling cannot testify with certainty regarding whether she read the 1993 brochure, Pre–Paid has indicated that the 1993 brochure was indeed available and in circulation during the time period in which Mrs. Poling was considering a relationship with Pre–Paid. Mrs. Poling testified that the sales associate discussing Pre–Paid's program informed her that Mrs. Poling could obtain peace of mind for her personal and business legal needs through this company who used top attorneys. During this meeting in May 1995, the sales associate showed Mrs. Poling Pre–Paid's pamphlets and booklets and described services offering high quality, experienced attorneys.

Siegrist, White, Martin & Conley, in November 1995. Mr. Farmer contacted Mrs. Poling very infrequently over the next few years,[4] assuring her during these conversations that her lawsuit was progressing in a satisfactory manner. Almost three years later, Mr. Farmer finally informed Mrs. Poling that he could no longer handle her case and that she should seek different counsel. Upon retaining another attorney, Mrs. Poling learned that her lawsuit had been dismissed over a year earlier for failure to serve the defendant.[5] She was not permitted to refile the action.

The Appellants filed a civil action against Pre–Paid Legal Services, Inc., for fraud and breach of contract in failing to ascertain the competence of the attorney to whom Mrs. Poling was referred.[6] Mrs. Poling also filed a civil action against Mr. Farmer for legal malpractice. On May 23, 2001, the lower court granted Pre–Paid's motion for summary judgment on the Appellants' fraud and breach of contract claims. The lower court also denied the Appellants' motion to reconsider its grant of summary judgment. This Court granted the Appellants' petition for appeal on May 1, 2002.

## II. Standard of Review

In syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court explained that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" In syllabus point one of *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992), this Court further instructed: " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)."

In reviewing a lower court's summary judgment determination, it must be acknowledged that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Painter*, 192 W.Va. at 190, 451 S.E.2d at 756.[7] Moreover, this Court has consistently held as follows:

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. Pt. 4, *Painter*, 192 W.Va. at 190, 451 S.E.2d at 756.

Rule 56(c) of the West Virginia Rules of Civil Procedure provides, in pertinent part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

4. Mr. Farmer left the law firm of Siegrist, White, Martin & Conley in February 1996. He took Mrs. Poling's case with him.

5. Mr. Farmer admits that he did not serve the complaint on the defendant in the underlying case and that he failed to tell the Appellants that their case had been dismissed.

6. While facts relating to the selection process utilized by Pre–Paid are in contention, Mrs. Poling represents that Pre–Paid had insubstantial information concerning Mr. Farmer's ability or experience at the time it referred Mrs. Poling to him. Mrs. Poling further contends that Pre–Paid knew that its West Virginia attorneys were chosen without any attempt to screen them for competence, experience, or reliability. Pre–Paid's computer file on Mr. Farmer indicates that he was a "nice attorney" who was willing to handle traffic tickets in Harrison County, West Virginia.

Mr. Farmer's testimony revealed that he had very little experience in automobile injury cases and no experience representing a plaintiff in an automobile personal injury claim. Pre–Paid contends that Mr. Farmer was a well-respected attorney and that no degree of investigation could have established that he was not an appropriate attorney for Mrs. Poling.

7. This Court noted in *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), that the role of a circuit court in a summary judgment examination "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " 194 W.Va. at 59, 459 S.E.2d at 336, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

is entitled to a judgment as a matter of law." In the context of examining a summary judgment request, this Court has explained that:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. Pt. 5, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995).

As we explained in syllabus point six of *Aetna Casualty and Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), reasonable doubts regarding the evidence must be resolved in favor of the non-moving party. "A party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." 148 W.Va. at 161, 133 S.E.2d at 772. To justify an award of summary judgment, the movant must demonstrate a lack of evidence to support the non-movant's case and "that the evidence is so one-sided that the movant must prevail as a matter of law." *Tolliver v. The Kroger Co.,* 201 W.Va. 509, 513, 498 S.E.2d 702, 706 (1997).

Summary judgment should be denied "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.), *cert. denied,* 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951). With regard to doubt regarding appropriateness of summary discharge of a case, this Court held as follows in syllabus point one of *Masinter v. WEBCO Co.,* 164 W.Va. 241, 262 S.E.2d 433 (1980): "Even if the trial judge is of the opinion to direct a verdict, he should nevertheless ordinarily hear evidence and, upon a trial, direct a verdict rather than try the case in advance on a motion for summary judgment."

### III. Discussion

The Appellants in the case sub judice contend that the lower court erred by granting summary judgment on their breach of contract and fraud claims where genuine issues of material fact existed for jury determination. While the legal underpinnings of the summary judgment issue on the breach of contract and fraud claims are similar, we address each of these claims separately below.

### A. Breach of Contract Claim

The Appellants assert that Pre–Paid breached its contractual obligations by failing to properly select, monitor, and evaluate the attorney to whom it referred Mrs. Poling. The essence of the contractual issue is that the Appellants contend that the "contract" between Mrs. Poling and Pre–Paid entailed substantially more than the limited statements contained in the boilerplate document sent to Mrs. Poling by Pre–Paid. Consequently, while the lower court found that Pre–Paid had not breached the terms of the boilerplate document to which Pre–Paid refers as the "contract," the Appellants contend on appeal that the lower court inappropriately determined the disputed facts by finding that only the boilerplate language constituted the "contract" between the parties. The Appellants maintain that while the legal determination of the terms of a contract is a matter of law, the factual determination of what actually constitutes the contract is a matter of fact for jury determination. As this Court acknowledged in syllabus point four of *Cook v. Heck's Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986), this Court stated that "[g]enerally, the existence of a contract is a question of fact for the jury."

In *Estate of Davis ex rel. Casey v. Farmers Mutual Insurance Co.,* 207 W.Va. 400, 533 S.E.2d 33 (2000), this Court addressed the lower court's determination that summary judgment was appropriate where the executrix of an insured's estate sued an insurer for breach of contract, fraud, bad faith, and unfair claims settlement practices. This Court reversed, concluding that genuine is-

sues of material fact existed regarding the circumstances surrounding the insurer's offer of settlement and the existence of an agreement regarding the actual cash value of the insured property. This Court focused upon the allegations of intentional misrepresentation of the method through which actual cash value of property is to be determined in total loss claims and, in particular, noted that "there are questions of fact relating to the circumstances surrounding the settlement offer and whether there was an agreement between the parties as to the actual cash value of the insured property." 207 W.Va. at 403, 533 S.E.2d at 36. The Court found that the factual issues precluded summary judgment and that those issues "need to be resolved by a jury." *Id.*

The specific allegations of the present case raise issues regarding exactly what constitutes the contract between Mrs. Poling and Pre–Paid. The Appellants contend that the written agreement is simply a boilerplate document which does not address the promises of selecting a competent referral attorney and continually monitoring and evaluating such attorney. Rather, the Appellants contend that such promises, forming the basis of this civil action, were made in a separate prior transaction in which Mrs. Poling was provided with certain guarantees and documents advertising specific services. Upon careful examination of the operation of the boilerplate document designated as the entire contract by Pre–Paid, it is clear that terms of operation regarding selection and screening of appropriate attorneys to whom members will be referred simply do not appear. Likewise, nothing appears in the boilerplate document regarding the undertaking by Pre–Paid to refer a member to a lawyer familiar with the law related to a member's particular problem or inquiry. Nevertheless, it is clear from Pre–Paid's brief and from counsel's explanations during oral argument that a primary purpose of having a member contact Pre–Paid when initiating the process of obtaining Pre–Paid's services was to permit Pre–Paid to locate an attorney suited to the member's particular inquiry. Thus, it

appears highly likely that testimony could be adduced to support the contention that terms in addition to the boilerplate document did indeed exist. The determination of what those other terms may be is the province of a jury.[8]

The lower court refused to consider extrinsic evidence in this case; yet this Court has specified that extrinsic evidence may be used to aid in the construction of a contract under certain circumstances:

> Extrinsic evidence may be used to aid in the construction of a contract if the matter in controversy is not clearly expressed in the contract, and in such case the intention of the parties is always important and the court may consider parol evidence in connection therewith with regard to conditions and objects relative to the matters involved. However, where the language of a contract is clear the language cannot be construed and must be given effect and no interpretation thereof is permissible.

Syl. Pt. 2, *Berkeley County Pub. Serv. Dist. v. Vitro Corp.*, 152 W.Va. 252, 162 S.E.2d 189 (1968). The circumstances of the present case appear to fit squarely within the parameters of the quote above. In this case, the "matter in controversy is not clearly expressed in the contract." *Id.* The issue is the assurances provided to Mrs. Poling which induced her to enter into the agreement with Pre–Paid. The written document does not address such assurances. The introduction of extrinsic evidence appears inescapable in this case. "Prior or contemporaneous parol statements may not be admitted to vary written contracts, but may be admitted to explain uncertain, *incomplete* or ambiguous contract terms." Syllabus, *Holiday Plaza, Inc. v. First Fed. Sav. and Loan Ass'n*, 168 W.Va. 356, 285 S.E.2d 131 (1981) (emphasis supplied).

In *Jessee v. Aycoth*, 202 W.Va. 215, 503 S.E.2d 528 (1998), the lower court had examined a settlement agreement in a divorce case and had determined that the agreement was "vague and uncertain." 202

---

**8.** In limited instances, such as the domain of credit card applications or other similar matters, an individual may fill out an application form and later be mailed a detailed set of terms. Our opinion in this case does not address those types of distinctive agreements.

W.Va. at 218, 503 S.E.2d at 531. The lower court permitted parol evidence to be offered to determine the effect of the agreement. *Id.* The *Jessee* Court reasoned:

> In the instant case, the provision in the settlement agreement relating to the marital residence was clear and unambiguous as to the division of duties and the division of equity. However, the provision was entirely silent regarding when the residence was to be sold. Therefore, the lower court was correct to admit parol evidence, in order to ascertain the intent of the parties.

*Id.* In *Fraternal Order of Police v. City of Fairmont,* 196 W.Va. 97, 468 S.E.2d 712 (1996), this Court noted:

> If an inquiring court concludes that an ambiguity exists in a contract, the ultimate resolution of it typically will turn on the parties' intent. Exploring the intent of the contracting parties often, but not always, involves marshaling facts extrinsic to the language of the contract document. When this need arises, these facts together with reasonable inferences extractable therefrom are superimposed on the ambiguous words to reveal the parties' discerned intent.

196 W.Va. at 101 n. 7, 468 S.E.2d at 716 n. 7. This Court also addressed the need for parol evidence in certain situation in the syllabus of *McShane v. Imperial Towers, Inc.,* 165 W.Va. 94, 267 S.E.2d 196 (1980), as follows:

> "While the general rule is that the construction of a writing is for the court; yet where the meaning is uncertain and ambiguous, parol evidence is admissible to show the situation of the parties, the surrounding circumstances when the writing was made, and the practical construction given to the contract by the parties themselves either contemporaneously or subsequently. If the parol evidence be not in conflict, the court must construe the writing; but if it be conflicting on a material point necessary to interpretation of the writing, then the question of its meaning should be left to the jury under proper hypothetical instructions." Syllabus Point 4, *Watson v. Buckhannon River Coal Co.,* 95 W.Va. 164, 120 S.E. 390 (1923).

Examining the evidence in a light most favorable to Mrs. Poling, as the non-movant for summary judgment, it appears that evidence exists from which reasonable minds could conclude that the contract in this case was formed when Mrs. Poling first accepted Pre–Paid's offer to become a member and sales associate and paid her membership fee. Pre–Paid's documents indicate that Mrs. Poling's membership was effective May 9, 1995, the date upon which Mrs. Poling signed her membership application with Pre–Paid, rather than the later date upon which Pre–Paid sent the boilerplate document it refers to as a contract. These evidentiary issues regarding the formation of a contract, whether the terms of which exist outside the confines of the boilerplate document, and the representations contained in the contract between the parties create genuine issues of material fact for jury resolution. The lower court's grant of summary judgment on the issue of breach of contract was consequently improper. We reverse and remand on that issue.

### B. Fraud Claim

 The Appellants also contend that the lower court inappropriately decided conflicts in the facts regarding Pre–Paid's promises and representations to induce Mrs. Poling purchase a membership and Pre–Paid's fraudulent activity in that action. This Court has consistently stated the elements of fraud as follows:

> The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree,* 104 W.Va. 238, 242, 139 S.E. 737[, 738] (1927).

Syl. Pt. 1, *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981). Further, in syllabus point one of *Horton v. Tyree,* 104 W.Va. 238, 139 S.E. 737 (1927), this Court explained:

> Where one person induces another to enter into a contract by false representations which he is in a situation to know, and which it is his duty to know, are untrue, he, in contemplation of law, does

know the statements to be untrue, and consequently they are held to be fraudulent, and the person injured has a remedy for the loss sustained by an action for damages. It is not indispensable to a recovery that the defendant actually knew them to be false.

In *Lengyel*, this Court further expressed:

It is not essential that the defendant know for a fact that the statement or act alleged to be fraudulent is false. An action for fraud may lie where the defendant either knows the statement to be false, makes the statement without knowledge as to its truth or falsity, or makes it under circumstances such that he should have known of its falsity.

167 W.Va. at 277, 280 S.E.2d at 69, citing *State v. Berkeley*, 41 W.Va. 455, 23 S.E. 608 (1895). The *Lengyel* Court also acknowledged that "[t]his Court has also looked askance at what is commonly called 'dealers talk' or 'puffing' as an excuse for misrepresentations...." 167 W.Va. at 277–78, 280 S.E.2d at 69.

In *Cordial v. Ernst & Young*, 199 W.Va. 119, 483 S.E.2d 248 (1996), this Court reiterated, "Thus, by definition, fraud does not require in all circumstances that its perpetrator have actual knowledge of the material falsity of a statement." 199 W.Va. at 130, 483 S.E.2d at 259. In *Osborne v. Holt*, 92 W.Va. 410, 114 S.E. 801 (1922), this Court explained:

(I)t is very uniformly held that if it is represented that a certain state of facts is true, and this representation is made for the purpose of inducing another to act thereon, or under such circumstances as that the party making it must know that the other is likely to act thereon, and he does act thereon to his disadvantage, he will be entitled to recover the damages suffered by him, notwithstanding the party making the representation had no actual knowledge of the real conditions at the time. He is under a duty to know that the things he represents as facts are in fact true at the time he makes the representa-

tion. It is no excuse for him to say that he did not know they were false.

92 W.Va. at 415–16, 114 S.E. at 803.

When viewing the evidence in the present case in a light most favorable to the Appellants, the evidence could lead reasonable minds to conclude that Pre–Paid induced Mrs. Poling to purchase the Pre–Paid legal services plan by promising that she could obtain the services of highly respected attorneys who had been rigorously screened, monitored, and evaluated, whom it subjects to member satisfaction surveys, and who have experience in the specific area of law in which the member needs assistance. Pre–Paid certainly comprehends that the individuals to whom it sells its memberships rely on such representations and rely on Pre–Paid to refer them to an attorney to be trusted. While it is not within this Court's domain to submit a judgment on that allegation of fraud, the facts as presented appear to create a legitimate issue for jury resolution. Once a jury determination is made regarding the parameters of the contract between Mrs. Poling and Pre–Paid, the Appellants may thereafter proceed under a different standard of proof on their fraud claim. It appears possible that the Appellants can adduce evidence of fraud if certain terms are determined to be part of the contract and if the Appellants can also prove an abject failure by Pre–Paid to fulfill these terms. We consequently find that the lower court erred in granting summary judgment to Pre–Paid on the fraud claim, and we reverse and remand on this issue.

### IV. Conclusion

Based upon the established principles of summary judgment enumerated above, as well as legal principles regarding allegations of breach of contract and fraud, we conclude that genuine issues of material fact exist which necessitate the presentation of this case to a jury. Unlike the circuit court, we are not firmly convinced that the factual issues herein have been finally resolved; moreover, the facts are such that reasonable persons could differ as to their proper interpretation. Accordingly, we reverse the circuit court's ruling granting

summary judgment and remand this matter for reinstatement of the Appellants' fraud and breach of contract claims.

Reversed and Remanded, With Directions.