599 S.E.2d 764

**Rebecca SPROUT, Plaintiff Below, Appellant**

v.

**The BOARD OF EDUCATION OF the COUNTY OF HARRISON, Defendant Below, Appellee.**

**No. 31545.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 10, 2004.

Decided May 13, 2004.

Dissenting Opinion of Justice Filed July 21, 2004.

McGraw, J., filed a dissenting opinion.

Amy M. Smith, Nancy W. Brown, Steptoe & Johnson, P.L.L.C., Clarksburg, for Appellee.

John Everett Roush, WV School Service Personnel Association, Charleston, for Appellant.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Harrison County entered August 16, 2002. In that order, the circuit court granted a motion for summary judgment in favor of the appellee and defendant below, the Board of Education of Harrison County (hereinafter "the Board"), and denied a motion for summary judgment filed by the appellant and plaintiff below, Rebecca Sprout. Ms. Sprout alleges that the Board entered into a contract with her settling two grievances she filed against the Board. In this appeal, Ms. Sprout contends that genuine issues of material fact exist precluding summary judgment. Conversely, the Board argues that summary judgment was properly granted by the circuit court. After reviewing the facts of the case, the issues presented, and the relevant statu-

tory and case law, this Court affirms the decision of the circuit court.

## I.

## FACTS

On June 15, 2001, Ms. Sprout sued to enforce a settlement she claims she reached with the Board. Ms. Sprout is a Secretary III/Accountant II at Gore Middle School. In 2000, Ms. Sprout filed two separate employment grievances. The first grievance, filed on April 10, 2000, involved a supplement the Board provides to employees who act as sponsors for the yearbook project at each school. Ms. Sprout claimed that the Board had failed to pay her the supplement even though she had acted as yearbook sponsor at Gore Middle School for many years. She filed her second grievance on August 14, 2000, challenging how the Board granted additional years of increment pay. Ms. Sprout alleged that she was entitled to credit for past work experience and had not been granted such credit by the Board.

As a result of Ms. Sprout's grievances, the Board instructed its personnel director, Sharon Brisbin, to approach Ms. Sprout and ask what amount would settle the pending grievances. Ms. Sprout responded that she would accept between $17,000 and $20,000. On February 2, 2001, Ms. Sprout submitted a written offer to the Board and reduced the amount she was requesting to $17,000.[1]

Subsequently, during executive session at the February 20, 2001 Board meeting, the Board voted to offer Ms. Sprout a settlement for both of her grievances. As such, Sally Cann, then President of the Board, was directed to offer Ms. Sprout $17,000 along with work experience credit in exchange for dropping her grievances. The following day, February 21, 2001, Ms. Cann approached Ms. Sprout and made the offer as directed by the Board. In clarification of the offer, Ms. Sprout asked if the settlement included the employee portion of the various normal withholdings from an employee salary in addition to the $17,000. Ms. Cann stated that the offer was $17,000 with the employee portion

---

1. Believing that some members of the Board had not received her February 2, 2001 letter, Ms. Sprout sent the letter again to all Board members on February 7, 2001.

of various withholdings coming out of that amount. Ms. Sprout found this acceptable. Ms. Cann explained that she would "get things started" and advised Ms. Sprout that she did not need to do anything further as the papers were to be prepared and then presented to the Board for approval. Ms. Sprout testified in her deposition that she understood that the agreement between her and Ms. Cann had to be put in writing and voted upon by the Board before it became effective.

Ms. Cann then reported Ms. Sprout's acceptance to the other Board members. However, the Board refused to approve the agreement based upon advice from its legal counsel, Basil Legg, Jr. On April 6, 2001, counsel for Ms. Sprout contacted Mr. Legg in writing to ascertain the status of the settlement payment to Ms. Sprout. By letter of April 19, 2001, Mr. Legg explained that there was no agreement. Thereafter, this lawsuit ensued. On August 16, 2002, the circuit court granted the Board summary judgment finding that no agreement had been reached. From this judgment, Ms. Sprout now appeals.

## II.

### STANDARD OF REVIEW

In this case, Ms. Sprout appeals the circuit court's summary judgment order. In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court held that: "A circuit court's entry of summary judgment is reviewed *de novo*." We have also held that, "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). In Syllabus Point 2 of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), this Court explained that,

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such

as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

With these principles in mind, we now consider the parties' arguments.

## III.

### DISCUSSION

Ms. Sprout contends the circuit court erred by granting summary judgment to the Board. She maintains that she had a valid contract with the Board because Ms. Cann made a proposal on behalf of the Board to settle her grievances which constituted a contractual offer that she correspondingly accepted. Ms. Sprout argues that no additional requirements were necessary for the agreement to be effective. Thus, she asserts that the Board should not have been granted summary judgment.

In response, the Board argues that a contract was not formed because the evidence shows that both parties believed that the agreement had to be reduced to writing and then reviewed again for further consideration. Moreover, the Board contends that since the proposed settlement was not on the agenda for the February 20, 2001 meeting, that the subsequent negotiations were *ultra vires* and, thus, not binding. Finally, the Board declares that even if there was a valid settlement offer made by Ms. Cann, Ms. Sprout made a counteroffer which extinguished Ms. Cann's authority to negotiate further.

At the outset, we note that our review here is simply limited to determining whether the circuit court properly granted summary judgment. In Syllabus Point 3 of *Painter*, we stated: "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." 192 W.Va. at 190, 451 S.E.2d at 756. Having reviewed the entire record, we find that the circuit court properly granted summary judgment because the evidence shows that the parties intended that the settlement agreement

would be reduced to writing and voted on by the Board before it became effective.

■ It is well established that " ' "[a] meeting of the minds of the parties is a *sine qua non* of all contracts." Point 1, syllabus, *Martin v. Ewing,* 112 W.Va. 332, 164 S.E. 859 [1932].' Syl. Pt. 1, *Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.,* 157 W.Va. 93, 199 S.E.2d 308 (1973)." Syllabus Point 4, *Riner v. Newbraugh,* 211 W.Va. 137, 563 S.E.2d 802 (2002). In other words, " '[s]ince a compromise and settlement is contractual in nature, a definite meeting of the minds is essential to a valid compromise, since a settlement cannot be predicated on equivocal actions of the parties.' 15A C.J.S. *Compromise & Settlement* § 7(1) (1967)." *O'Connor v. GCC Beverages, Inc.,* 182 W.Va. 689, 691, 391 S.E.2d 379, 381 (1990). This Court has also held that

Where, from all the evidence and circumstances of the case, it appears that the parties to an agreement being negotiated between them intend that, as a condition precedent to its becoming binding upon them, it should be reduced to writing and signed by the parties, an oral agreement, though it covers all the terms of the proposed agreement, is not binding on the parties, until it is reduced to writing, and has been signed by all the parties thereto.

Syllabus Point 1, *Blair v. Dickinson,* 133 W.Va. 38, 54 S.E.2d 828 (1949). Moreover, "While a valid contract may be made between parties by memorandum, telegrams, and correspondence, care should be taken not to construe as an agreement that which the parties only intended to be a preliminary negotiation. The question in such cases is, Did the parties mean to contract by the memorandum of agreement, or were they only settling the terms of an agreement into which they proposed to enter after all its particulars were adjusted, which was then to be formally drawn up, and by which alone they designed to be bound? Such intention must necessarily be determined from the cir-

cumstances and surroundings appearing in each particular case."

133 W.Va. at 68–69, 54 S.E.2d at 844, quoting *Virginian Export Coal Company v. Rowland Land Company,* 100 W.Va. 559, 131 S.E. 253 (1926).

■ We find that although an agreement may have been tentatively reached between Ms. Sprout and the Board on February 21, 2001, the letters and proposed written settlement agreements that passed from one party to the other, after the conversation between Ms. Sprout and Ms. Cann, showed that there was no true meeting of the minds. This conclusion is supported by Ms. Sprout's own deposition testimony. During her deposition she stated, "It was my understanding from [Ms. Cann] that they sent her down to see if I would accept that. Then the papers were to be drawn up, and they were going to vote at the next Board meeting." In addition, after being asked, "And when that was written up and you signed it, *that's when the contract would have been formed?,"* Ms. Sprout responded, *"Exactly."* Absent this critical and necessary contractual element, we cannot find that a contract existed between Ms. Sprout and the Board.

It is clear that neither party in this case intended to nor expected to be bound by the agreement until the particular terms were provided for in a written contract that would be voted upon at a later date by the Board. We have held that, "it may be said that when it is shown that the parties intend to reduce a contract to writing this circumstance creates a presumption that no final contract has been entered into, which requires strong evidence to overcome." *Dickinson,* 133 W.Va. at 70, 54 S.E.2d at 844 (1949) (citations omitted).

We therefore find that based upon the information in the record there was no settlement agreement because the parties intended to reduce the terms of the settlement negotiations to writing prior to full approval of the Board in order for the contract to be effective.[2] Accordingly, we find that summary

---

**2.** We thus find it unnecessary to address whether there was a counteroffer or whether the Board's actions on February 20, 2001 were *ultra vires.* We do, however, note that the record before this

Court is devoid of a copy of the February 20, 2001 Board meeting agenda. Nevertheless, the record does clearly demonstrate that the Board members discussed this issue during executive

judgment in favor of the Board was appropriate.[3]

## IV.

## CONCLUSION

For the reasons set forth above, the August 16, 2002, final order of the Circuit Court of Harrison County is affirmed.

Affirmed.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, Justice, dissenting.

(Filed July 21, 2004)

I dissent from the majority opinion because whether the parties entered into a binding settlement agreement is a question for the trier of fact and is not a question properly resolved at the summary judgment stage. "As a general proposition, it is recognized that the questions of whether parties have reached a meeting of minds in an agreement situation and whether their undertakings have involved mutuality, are ordinarily ones of fact." *Conley v. Johnson*, 213 W.Va. 251, 254, 580 S.E.2d 865, 868 (2003). "Further, it is has been held that summary judgment is rarely appropriate where there is a meeting-of-the-minds question." Id. *See* Syl. pt. 8, *Poling v. Pre–Paid Legal Services, Inc.*, 212 W.Va. 589, 575 S.E.2d 199 (2002) ("'Generally, the existence of a contract is a question of fact for the jury.' Syl. Pt. 4, *Cook v. Heck's, Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986).").

The evidence in this case reveals that the Board voted to offer Ms. Sprout the sum of $17,000.00, plus work experience credit, to settle her grievances. Through its president, the Board extended the offer. In response, Ms. Sprout inquired whether the various normal withholdings would be taken out of the offered amount, to which the Board president responded affirmatively. Ms. Sprout accepted the offer. Thereafter, the Board members were advised by their counsel they might be personally liable for the settlement amount. Ultimately, the Board denied that any settlement agreement had been reached.

The issue of whether Ms. Sprout and the Board had a "meeting of the minds" with respect to settlement of Ms. Sprout's grievances presents a question for the trier of fact, not for the trial judge on summary judgment and certainly not for this Court on appeal. "[D]isputes about whether a contract has or has not been formed as the result of words and conduct over a period of time are quintessentially disputes about states of mind.... these subjective states and objective manifestations present interpretive issues traditionally understood to be for the trier of fact." 4A M.J. Contracts § 92, p. 546.

Because whether a meeting of the minds occurred in this case is a factual question to be resolved by a jury, rather than a legal one, I must dissent from the majority.

Based upon the foregoing, I respectfully dissent.

---

session for more than two hours and that the Board's legal counsel was present at the meeting. To this end, with regard to the Board's contention that it acted on measures that were not on the agenda, we caution the Board and its counsel to familiarize themselves with W.Va.Code § 6–9A–3 (requiring an agency to give notice of the agenda) and W.Va.Code § 6–9A–7(a) (declaring that a violation of the Open Government Meetings Act is a misdemeanor) for future meetings.

**3.** We wish to make clear that our decision today places both parties in the same position they would have been but for the putative settlement. Thus, Ms. Sprout may now pursue her grievance through the proper grievance process.