468 S.E.2d 712

**FRATERNAL ORDER OF POLICE, LODGE NUMBER 69, and Thomas L. Hartley, Plaintiffs Below,**

**Fraternal Order of Police, Lodge Number 69, Appellant,**

v.

**The CITY OF FAIRMONT and Edwin Thorne, as City Manager, Defendants Below, Appellees.**

No. 22905.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1996.

Decided Feb. 14, 1996.

CLECKLEY, Justice:

One of the plaintiffs below and the appellant herein, the Fraternal Order of Police, Lodge Number 69,[1] appeals the final order of the Circuit Court of Marion County entered on November 15, 1994, which denied its post-trial motion for a judgment notwithstanding the verdict and to set aside the verdict or alternatively for a new trial. After a jury trial, the trial court entered a verdict in favor of the defendants below and appellees herein, the City of Fairmont and Edwin Thorne, as City Manager. On appeal, the plaintiff asserts that the trial court erred by denying its motion for a directed verdict, by refusing to give certain jury instructions, and by submitting the issue of "mutual assent" to the jury.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff serves as the collective bargaining unit for police officers employed by the City of Fairmont. On June 24, 1992, a written "Wage and Benefit Agreement" was executed between the parties. The two-year agreement took effect on July 1, 1992, and expired on June 30, 1994. The focus of the dispute between the parties centers on Article 4, Paragraph F of the agreement which provides:

> "All scheduling shall provide a 40 hour work week and a one half hour paid lunch period for all union employees. [Fraternal Order of Police] members shall receive a 4% per year wage increase, effective the first day of the fiscal year beginning immediately after execution of this agreement."

The plaintiff argues that the phrase "a 4% per year wage increase" means that the police officers should have received a 4 percent wage increase in 1992 and another 4 percent wage increase in 1993. On the other hand, the defendants maintain that the police officers were entitled only to a one time 4 percent increase.

Brent E. Beveridge, Fairmont, for Appellant.

James A. Russell, Steptoe & Johnson, Morgantown, for Appellees.

---

1. Also named as a plaintiff below was former police officer Thomas L. Hartley whose claims are derivative of the claims made by the Fraternal Order of Police.

On September 8, 1994, a jury trial was held. At the trial, the testimony primarily focused on the parties' negotiations while the contract was being formed and the "per year" language in Paragraph F. At the close of the evidence, the jury returned a verdict in favor of the defendants' position.

## II.

### STANDARD OF REVIEW

We face a preliminary dispute as to the applicable standard of review.[2] The plaintiff believes that, inasmuch as its claim requires a construction of an unambiguous contract, only a question of law is presented and our review is plenary. On the other hand, the defendants come to this appeal aided by a favorable jury verdict and, thus, premise their argument on the deference a jury verdict is to be accorded. For reasons discussed below, both parties partially are correct.

Since our decision in *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), there can be no doubt that it is for a trial court to determine whether the terms of an integrated agreement are unambiguous and, if so, to construe the contract according to its plain meaning. In this sense, questions about the meaning of contractual provisions are questions of law, and we review a trial court's answers to them *de novo*. 194 W.Va. at 65 n. 23, 459 S.E.2d at 342 n. 23, *citing Thrift v. Hubbard*, 44 F.3d 348, 357–58 (5th Cir.1995). However, when a trial court's answers rest not on plain meaning but on differential findings by a trier of fact, derived from extrinsic evidence as to the parties' intent with regard to an uncertain contractual provision, appellate review proceeds under the "clearly erroneous" standard. The same standard pertains whenever a trial court decides factual matters that are essential to ascertaining the parties' rights in a particular situation (though not dependent on the meaning of the contractual terms *per se* ). In these types of cases, the issues are ordinarily fact-dominated rather than law-dominated and, to that extent, the trial court's resolution of them is entitled to deference.[3]

These principles resonate here. The defendants attempt to escape from their contractual obligation by arguing that the contract was ambiguous and, therefore, as the trial court found, a factual question as to the parties' intent was presented. Under these circumstances, appellate review would be circumscribed by the jurisprudence of clear error.[4] *See Burnside v. Burnside*, 194

---

2. The circuit court's denial of the motion for judgment as a matter of law poses a question of law, and, therefore, this Court's review of such a ruling is plenary. In addressing such issues on appeal, we must approach the evidence from a coign of vantage identical to that employed by the trial court in the first instance. This approach dictates that we take the record in the light most flattering to the nonmoving party, without probing the veracity of the witnesses, resolving conflicts in the testimony, or assaying the weight of the evidence. We may reverse the denial of such a motion only if reasonable persons could not have reached the conclusion that the jury embraced.

3. Many cases involve what courts term "mixed" questions—questions which, if they are to be resolved properly, necessitate combining fact-finding with an elucidation of the applicable law. The standard of review applicable to mixed questions usually depends upon where they fall along the degree-of-deference continuum: "The more fact dominated the question, the more likely it is the trier's resolution of it will be accepted unless shown to be clearly erroneous." *Tennant v. Mar-*

*ion Health Care Foundation, Inc.*, 194 W.Va. 97, 106, 459 S.E.2d 374, 383 (1995).

4. This rule is of appreciable importance to the parties because clear-error review ordinarily heralds a rocky road for an appellant. Under this standard, appellate courts cannot presume to decide factual issues anew. Our precedent ordains that deference be paid to the trier's assessment of the evidence. Moreover, the clearly erroneous rule loses none of its rigor "when the [lower] court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518, 528 (1985). In the last analysis, an appellate tribunal should not upset findings of fact or conclusions drawn therefrom unless, on the whole of the record, the judges form a strong, unyielding belief that a mistake has been made. Under this standard, as long as the lower court's rendition of the record is plausible, our inquiry is at an end. *Board of Educ. of County of Mercer v. Wirt*, 192 W.Va. 568, 579, 453 S.E.2d 402, 413 (1994).

W.Va. 263, 265, 460 S.E.2d 264, 266 (1995). Thus, the key to this case is whether the contractual provision at issue is unambiguous. If it is, this case presents a question of law that is subject to our *de novo* review. On the other hand, if ambiguous it becomes a factual issue, and we must give deference to the findings made below.

### III.

### ANALYSIS

On September 19, 1994, the plaintiff filed a post-trial motion for a directed verdict.[5] The plaintiff argues that the phrase "a 4% per year wage increase" in Paragraph F is clear and unambiguous and the only reasonable interpretation of this phrase is that the police officers should have received a 4 percent wage increase each year of the contract. The plaintiff contends that merely because the parties do not agree on the meaning of Paragraph F does not create an ambiguity in the language. Therefore, the plaintiff asserts it was entitled to a directed verdict because the question was one of contract interpretation for the trial court to decide and not a question of fact to be submitted to the jury.[6]

We approach these contentions mindful that the agreement, signed by both parties, represents the essence of long and hard labor negotiations between the parties and is subject to interpretation in accordance with the tenets of West Virginia common law. In construing the terms of a contract, we are guided by the common-sense canons of contract interpretation. One such canon teaches that contracts containing unambiguous language must be construed according to their plain and natural meaning. *Payne v. Wes-*

ton, 195 W.Va. 502, 507, 466 S.E.2d 161, 166 (1985). Contract language usually is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken.[7] In note 23 of *Williams*, 194 W.Va. at 65, 459 S.E.2d at 342, we said: "A contract is ambiguous when it is *reasonably* susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction." (Emphasis added).

Thus, we are to ascertain the meaning of the agreement as manifested by its language. Our task is not to rewrite the terms of contact between the parties; instead, we are to enforce it as written. We stated in Syllabus Point 2 of *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617 (1981):

> " 'It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.' *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962), Syllabus Point 3."

If language in a contract is found to be plain and unambiguous, such language should be applied according to such meaning.

The defendants strive to topple this edifice, contending that reasonable minds may disagree over the correct interpretation of the phrase "a 4% per year wage increase[.]" The defendants state, for example, that one interpretation may be like the position taken

---

**5.** Although this motion was not filed until after the verdict was returned, the trial court told the parties at the close of the plaintiffs' case-in-chief and again after the defendants' presentation of evidence that it would preserve a spot on the record for the parties' motions. At the same time the plaintiff filed its motion for a directed verdict, it also filed a motion for a judgment notwithstanding the verdict and to set aside the verdict or alternatively for a new trial.

**6.** On the other hand, the defendants allege the phrase "a 4% per year wage increase" is ambigu-

ous as we defined "ambiguous" in *Williams v. Precision Coil, Inc., supra.*

**7.** If an inquiring court concludes that an ambiguity exists in a contract, the ultimate resolution of it typically will turn on the parties' intent. Exploring the intent of the contracting parties often, but not always, involves marshaling facts extrinsic to the language of the contract document. When this need arises, these facts together with reasonable inferences extractable therefrom are superimposed on the ambiguous words to reveal the parties' discerned intent.

by the plaintiff in that the wage increase should be 4 percent each and every year of the contract. However, another interpretation could be that the phrase "a 4% per year wage increase" means a one-time wage increase during the life of the contract. To support the second interpretation, the defendants state that "the indefinite article 'a' precedes a singular noun (*i.e.*, *a* wage increase), rather than a plural noun (*e.g.*, wage increases)." (Emphasis defendants'). Thus, the defendants contend the phrase "4% per year" refers to how much the wage increase should be. As a result of this alleged ambiguity, the defendants argue that the intent of the parties must control and the trier of fact could consider the circumstances surrounding the formation of the contract. There is no principled way which we can accommodate the defendants' request because we find the disputed language is plain and unambiguous.

◼ We begin this analytic segment by laying a straw man to rest. According to *Black's Law Dictionary* 1145 (6th ed.1990), the phrase "per year" "[i]n a contract[ ] is the equivalent to the word 'annually.'" This definition was announced in our country's jurisprudence at least as early as 1868. *See Curtiss v. Howell*, 39 N.Y. 211 (1868); *see also Larson v. Augustana Colonization Ass'n of N. Am.*, 155 Minn. 1, 192 N.W. 108 (1923) (ordinarily the words "per year" "mean 'annually' or 'by the year.'" *Citing Curtiss, supra*). In an analogous case to the present one, the New York Supreme Court, Appellate Division, ruled in *Werner v. Republic Yeast Corp.*, 264 A.D. 908, 35 N.Y.S.2d 812, 813 (1942), that "the words 'per week'" in a contract were not ambiguous and "must be taken in their ordinary sense and mean each and every week."

In *Werner*, the plaintiff and defendant entered into an employment contract whereby the plaintiff agreed to sell a certain amount of yeast "per week" or the contract could be cancelled by the defendant. 35 N.Y.S.2d at 813. The plaintiff was fired after he failed to sell the specified amount. 35 N.Y.S.2d at 813. Believing the contract was ambiguous, the lower court admitted parol evidence which tended to show, in part, that the phrase "per week" meant the sales were to be averaged over a number of weeks. 35 N.Y.S.2d at 813. The Supreme Court reversed finding the phrase "per week" was not ambiguous and the admission of the parol evidence "had the effect of re-writing the contract and making a new one more favorable to the plaintiff under the guise of construction." 35 N.Y.S.2d at 813. The Supreme Court further stated "[i]f the plaintiff made an extravagant promise he cannot be relieved under the pretense that his promise is ambiguous." 35 N.Y.S.2d at 813.

In the present case, we find no merit to the defendants' claim that the phrase "a 4% per year wage increase" is ambiguous. Certainly, if we take out the critical language "per year" the contract language would read "a 4% ... wage increase" and may be interpreted as only one increase. However, the contract specifically includes the words "per year," and we cannot dismiss the plain and unambiguous definition of that phrase. If we substitute the equivalent word "annual" for the words "per year," it is clear that the police officers were entitled to "a 4% [annual] wage increase[.]" The only reasonable interpretation of the disputed language we can conceive is that the contract provided for a 4 percent wage increase each and every year of the contract. *See Williams*, 194 W.Va. at 65 n. 23, 459 S.E.2d at 342 n. 23. As we implied in Syllabus Point 2 of *Bennett, supra*, and as the court expressed in *Werner, supra*, we cannot rewrite the language of the contract under the pretense of construction for the defendants to receive a more favorable result.

Moreover, in Syllabus Point 1 of *International Nickel Co., Inc. v. Commonwealth Gas Corp.*, 152 W.Va. 296, 163 S.E.2d 677 (1968), we stated:

"'The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous

is a question of law to be determined by the court.' Syl.Pt. 1, *Berkeley Co. Pub. Ser. Dist. v. Vitro Corp.,* 152 W.Va. [252, 162 S.E.2d 189 (1968) ]."

Admittedly, the plaintiff and the defendants do not agree on the construction of the disputed contract language, but this disagreement does not render the language ambiguous. We find the trial court should have determined as a matter of law that the phrase "a 4% per year wage increase" is not ambiguous and means the police officers are entitled to a 4 percent wage increase each and every year of the contract.

 The defendants contended at oral argument that the concluding language "effective the first day of the fiscal year beginning immediately after execution of this agreement" is sufficient to limit the pay increase to one year because it speaks only to one year and not "years." This argument has the shrill ring of desperation. The defendants' mental gymnastics are indeed nimble, but an accepted canon of construction forbids the balkanization of contracts for interpretive purposes. *See Restatement (Second) of Contracts* § 202 cmt. d at 88 (1981) (explaining that "[w]here the whole can be read to give significance to each part, that reading is preferred"). Here, when the phrase "effective the first day of the fiscal year beginning immediately after execution

of this agreement" is read in the full context of the sentence, the language is not ambiguous at all. The preceding words spell out precisely the times and the amounts of pay raises the police officers were to receive in this executed agreement. Simply stated, the pay increase is "4% per year." Viewed against this backdrop, it is pellucid that the later use of the "effective . . . day" terminology refers only to when the first pay raise was to commence. We conclude from what is written within the four corners of the agreement the term "4% per year" simply and unambiguously describes that each year of the contract the police were to receive a 4 percent wage increase.[8]

The defendants have presented us with an artful reading of the agreement, but that reading belies the plain meaning of the contract as a whole. The agreement is clear, and lengthy judicial proceedings do not make it any clearer. This Court refuses to rewrite the contract to favor the defendants. There being no other issue before the trial court, it then should have granted the plaintiff's motion for a directed verdict.

## IV.

## CONCLUSION

For the foregoing reasons, we reverse the final order of the Circuit Court of Marion County and remand this case to the trial

---

8. Our holding is buttressed by the fact that the interpretation the defendants argue for was rejected earlier in negotiations by the plaintiff. Of course, at oral argument, the defendants contended this information is extrinsic to the agreement and should not be considered in interpreting an unambiguous contract. Even here, we do not agree entirely with the defendants. As a general rule, a court should not consider extrinsic evidence to give meaning to a contract unless the contract terms are vague and ambiguous. *See* Syl. pt. 2, *Kelley, Gidley, Blair & Wolfe, Inc. v. City of Parkersburg,* 190 W.Va. 406, 438 S.E.2d 586 (1993); Syl. pt. 2, *International Nickel, supra;* Syl. pt. 2, *Berkeley Co. Pub. Serv. Dist. v. Vitro Corp. of Am.,* 152 W.Va. 252, 162 S.E.2d 189 (1968). However, if the evidence is not offered to infuse the contract with meaning, but only to demonstrate that a term is (or is not) vague or ambiguous in the first place, then the situation may be different. Courts sometimes may ponder extrinsic evidence to determine

whether an apparently clear term actually is uncertain. *See Restatement (Second) of Contracts, supra* § 212 cmt. b at 126 (suggesting that determinations of ambiguity are best "made in light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties"); 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 7.12 at 277–78 (1990) (approving this view); *see also* 3 Arthur L. Corbin, *Contracts* § 579 (1960) (to like effect). Of course, this exception is narrow at best, and it only may be employed for the purpose of determining whether an ambiguity exists if it suggests a meaning to which the challenged language reasonably is susceptible. *See* 2 Farnsworth, *supra* § 7.12 at 278. We do not use it here to contradict contract language or to drain an agreement's text of all content save ink and paper.

court for entry of an order directing a verdict in favor of the plaintiff.[9]

Reversed and remanded.

9. As a result of our decision, it is unnecessary for us to address the plaintiff's remaining two as- signments of error.