# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Robert B. Taft and Louise Price Taft,**
**Plaintiffs Below, Petitioners**

**vs)  No. 18-0514** (Monongalia 17-C-61)

**Michael Kolodney, M.D.,**
**Defendant Below, Respondent**

**FILED**

**September 9, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Robert B. Taft and his mother, Louise Price Taft, by counsel Jacques R. Williams, appeal the March 23, 2018, order of the Circuit Court of Monongalia County that granted Respondent Dr. Michael Kolodney's motion for summary judgment, and denied the petitioners' motion for partial summary judgment in this case regarding respondent's revocation of his offer to purchase real estate from petitioners. Respondent, by counsel Stephen G. Higgins, Matthew D. Elshiaty, and Lindsay Gainer, filed a response in support of the circuit court's order. Petitioners filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2016, Petitioner Robert B. Taft, Jr. ("Mr. Taft") and his mother, Petitioner Louise Price Taft ("Mrs. Taft"), co-owned a house in Monongalia County. In the fall of 2016, the Tafts entered into a contract to sell their house to Dr. Martin and Dr. Layne (the "doctors") for $1.345 million. At the time, Respondent Michael Kolodney, M.D., was leasing the Tafts's house. Dr. Kolodney told the Tafts he would like to buy the house or extend his lease at a higher monthly rent. Mr. Taft claims he told Dr. Kolodney that he and his mother were under contract to sell the house to the doctors, but were concerned the doctors would not close on the purchase by the agreed date. The Tafts also claim Dr. Kolodney agreed to be a backup purchaser for $1.395 million, of which $50,000 would be payable as an earnest money deposit. Dr. Kolodney's attorney, Robert D. Berryman, prepared a contract specifying a three-day acceptance period, the purchase price, and a $50,000 earnest money deposit. The contract also expressly provided that Dr. Kolodney was a secondary or backup buyer in light of the doctors' primary contract.

On Thursday, December 22, 2016, the doctors asked the Tafts for permission to conduct an additional inspection of the house. Fearing a delay of sale, the Tafts declined the request. The

1

next day, December 23, 2016, at approximately 3:00 p.m., Dr. Kolodney delivered to the Tafts's attorney, Jacques Williams, a contract to purchase the house and a personal check for the $50,000 earnest money deposit. Dr. Kolodney notified Mr. Taft that he had delivered the contract and earnest money deposit to the Tafts's attorney. Mr. Taft claims that, based on Dr. Kolodney's actions, he decided to have no further negotiations with the doctors. Dr. Kolodney counters that Mr. Taft told him as early as December 19, 2016, that he did not intend to contract with the doctors.

At about 5:00 p.m. that same day, Friday, December 23, 2016, Dr. Kolodney told his attorney that he had reconsidered and no longer wanted to purchase the Tafts's house. Six minutes later, at 5:06 p.m., Dr. Kolodney's attorney sent an e-mail to the Tafts's attorney revoking Dr. Kolodney's offer. However, due to the Christmas holiday, the Tafts's counsel did not see the e-mail revoking Dr. Kolodney's offer until Monday, December 26, 2016.

On Saturday, December 24, 2016, the doctors also terminated their contract to purchase the Tafts's house. That same day, Mr. Taft signed Dr. Kolodney's purchase contract. Mrs. Taft signed the contract the next day, December 25, 2016. It is uncontested that the Tafts signed the purchase contract within the three-day acceptance period provided in the contract.

The Tafts claim Mr. Taft had multiple text-based conversations with Dr. Kolodney on December 23, 24, and 25, 2016, but that Dr. Kolodney never told Mr. Taft that he (Dr. Kolodney) had revoked the contract. On Sunday, December 25, 2016, Dr. Kolodney texted a new purchase offer to Mr. Taft that was contingent upon numerous new terms and was open only until the end of the day. However, the day ended without any agreement between the parties. On Monday, December 26, 2016, Dr. Kolodney stopped payment on his $50,000 check for the earnest money deposit.

The Tafts filed this action against Dr. Kolodney on February 8, 2017. Following discovery, the Tafts filed a motion for partial summary judgment in which they argued that Dr. Kolodney forfeited his $50,000 earnest money deposit when he breached the contract to buy the Tafts's house. Dr. Kolodney responded with his own motion for summary judgment claiming that he lawfully revoked his offer to purchase the Tafts's house before the Tafts accepted the offer, and that the Tafts failed to prove that the offer was not revocable.

On March 23, 2018, the circuit court granted Dr. Kolodney's motion for summary judgment. The circuit court found (1) the terms of Dr. Kolodney's offer to purchase the Tafts's house made the offer revocable until the Tafts accepted it; (2) before the Tafts accepted Dr. Kolodney's offer, Dr. Kolodney withdrew it; and (3) the Tafts failed to demonstrate that the offer was not revocable. The circuit court also denied the Tafts's motion for partial summary judgment regarding their claim that Dr. Kolodney forfeited his earnest money deposit when he revoked his offer. The circuit court concluded that in the absence of an offer, there could be no contract; and in the absence of a contract, there could be no default. By order entered May 10, 2018, the circuit court directed that its March 23, 2018, order would be a final judgment within the meaning and scope of Rule 54(b) of the West Virginia Rules of Civil Procedure.

The Tafts now appeal. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Our review is guided by the principle that

> "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, Syl. Pt. 2. Furthermore,

> "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus point 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

Syl. Pt. 5, *Toth v. Bd. of Parks & Recreation Comm'rs*, 215 W. Va. 51, 593 S.E.2d 576 (2003).

The Tafts raise four assignments of error on appeal. The Tafts first argue that, based on the language in the contract's first and twelfth paragraphs, the circuit court erred in ruling Dr. Kolodney's purchase offer was unconditionally revocable within the three-day offer period. The first paragraph of the parties' contract provides:

> (1) OFFER AND ACCEPTANCE: Upon the signing hereof by Purchaser, this instrument shall constitute an offer to purchase and shall terminate or may be withdrawn unless accepted by the Seller within the time period herein stipulated by Seller's signature being affixed hereto . . . .

The twelfth paragraph provides:

> (12) OFFER TO PURCHASE PERIOD AND TIME OF PERFORMANCE: (a) This offer to purchase must be accepted by Seller on or before the three (3) days from date of Purchaser's signature, at 12:00 o'clock, P.M.; and if not accepted within that period, the EARNEST DEPOSIT shall forthwith be returned to the Purchaser . . . .

Based on these terms, the Tafts argue that Dr. Kolodney agreed to purchase the house when the Tafts accepted his offer within the three-day acceptance period found in Paragraph (12); thus, they were not required to return the earnest money deposit to Dr. Kolodney. The Tafts further argue that the contract did not expressly allow Dr. Kolodney to unilaterally withdraw his offer prior to the expiration of the three-day period. Finally, the Tafts argue that Dr. Kolodney ratified his commitment to purchase the house by tendering the $50,000 earnest money deposit as required by paragraph (2) of the purchase contract. That paragraph provides:

(2) EARNEST DEPOSIT: The earnest money deposit shall be paid to Jacques Williams, Esq., attorney for Seller and held in Trust to apply on purchase price, or, returned to Purchaser, as this agreement provides. If Purchaser fails, or refuses, to consummate the purchase of said property for any reason other than default upon the part of Seller, or the contingencies herein expressly set forth, the earnest deposit shall be retained by Seller as liquidated damages.

The circuit court did not err in finding that Dr. Kolodney's purchase offer was unconditionally revocable within the three-day offer period where Dr. Kolodney communicated his revocation by legal means. Dr. Kolodney tendered his offer to the Tafts at 3:00 p.m. on December 23, 2016, and revoked the offer at 5:06 p.m. that same day before the Tafts had executed the contract. Thus, at 5:06 p.m. on December 23, 2016, there was no longer an offer to contract. "An offeree's power of acceptance is terminated when the offeree receives from the offerer a manifestation of an intention not to enter into the proposed contract." Restatement (Second) of Contracts § 42 (1981). Further, we have long held that,

[b]efore acceptance, a proposal is "but an offer to contract, and the parties making the offer might undoubtedly withdraw it at any time before acceptance." The right to revoke before acceptance is one which prior conditions cannot limit. Thus, at an auction sale, the bidder may at any time recall his bid before the hammer falls, though the conditions of sale are that no bidding shall be retracted, and the seller may retract, though the sale was to be without reserve. It would be a *petitio principle* to say that the party retracting was bound by contract not to retract, since it is to this very contract not to retract that his retracting applies.

*Weaver v. Burr*, 31 W. Va. 736, 744, 8 S.E. 743, 747 (1888) (internal citations omitted).

Moreover, the terms of the parties' contract created a revocable offer. Specifically, the "OFFER AND ACCEPTANCE" language found in Paragraph (1) of the purchase contract provides that once Dr. Kolodney signed the contract, his offer could "be withdrawn unless accepted by the Seller within the time period herein stipulated by Seller's signature being affixed hereto, or, by a duly authorized agent of the Seller." This language is unambiguous; petitioner could withdraw from the contract prior to the Tafts's execution of the contract. "If language in a contract is found to be plain and unambiguous, such language should be applied according to such meaning." *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 196 W. Va. 97, 101, 468 S.E.2d 712, 716 (1996).

As for the Tafts's reliance on paragraph 12 of the contract, it creates time restrictions on the Tafts's performance, and not on Dr. Kolodney's performance. In that regard, Dr. Kolodney's attorney, who drafted the contract, stated in an affidavit that:

7. Within the agreement, I included language which created a contingent offer that could be withdrawn at any time prior to its acceptance.

4

8. At no time did Dr. Kolodney or anyone else request that I draft an agreement in which Dr. Kolodney's offer to purchase the Subject Property could not be withdrawn prior to acceptance by [the Tafts].

9. At no time did I receive any written or verbal communication from Dr. Kolodney or anyone else requesting that the agreement include a clause which would create an irrevocable offer to be held open for any length of time.

. . . .

11. [Dr. Kolodney's] offer to purchase the Subject Property was not irrevocable, was never intended to be irrevocable, and, when drafting the agreement, I included language specifically permitting [Dr. Kolodney] to withdraw his offer before [the Tafts] accepted it.

Based on this record, we reject petitioners' first assignment of error.

In the Tafts's second assignment of error they argue that the circuit court erred in finding the Tafts did not offer valuable consideration during the three-day acceptance period and, therefore, negated Dr. Kolodney's revocation. The Tafts maintain that they offered valuable consideration during the three-day acceptance period when they ceased negotiating with the doctors following Dr. Kolodney's delivery of the signed purchase contract and the $50,000 earnest money check.

We concur with the circuit court's finding that the parties did not bargain for or offer consideration in exchange for creating an irrevocable offer to purchase the Tafts's house. Consideration is "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by the promisor from a promisee; that which motivates a person to do something; esp. to engage in a legal act." *Consideration,* Black's Law Dictionary, (10th ed. 2014). "To constitute consideration, a performance or a return promise must be bargained for." Restatement (Second) of Contracts 2d § 71 (Am. Law. Inst. 1981). Here, the Tafts fail to show how or when the parties bargained for any consideration. Further, Dr. Kolodney's attorney stated in his affidavit that "[a]t no time did I receive any written or verbal communication from anyone discussing that consideration be given to [Dr. Kolodney] for an irrevocable offer to purchase the Subject Property." Finally, Mr. Taft, in his own testimony, admitted that the parties did not negotiate an irrevocable offer:

*Dr. Kolodney's Counsel*: When [Dr. Kolodney] made his offer to purchase [your home], is it your understanding that his offer was revocable or irrevocable?

*Mr. Taft*: Answer: It was my understanding that it was irrevocable.

*Dr. Kolodney's Counsel*: Why?

*Mr. Taft*: Because he signed the agreement that we had discussed in great detail and he convinced me that he wanted the house. I thought it was a foregone

5

conclusion given all the circumstances and conversation prior to this date that it was a done deal when he signed the contract.

> *Dr. Kolodney's Counsel*: Did he ever tell you that he was making an offer that he could not take back?

> *Mr. Taft*: No.

> *Dr. Kolodney's Counsel*: Did you ever tell him once he made the offer he could not take it back.

> Mr. Taft: No.

Because the Tafts produced no evidence showing bargained-for consideration, they have no legal basis for claiming Dr. Kolodney's offer was not revocable. Accordingly, we find the circuit court did not err in finding that Dr. Kolodney's offer to contract was revocable.

In their third assignment of error, the Tafts argue that the circuit court erred in granting Dr. Kolodney's motion for summary judgment because Dr. Kolodney's conduct estopped him from asserting revocation. Specifically, the Tafts note that while Dr. Kolodney and Mr. Taft communicated via text on December 23, 24, and 25, 2016, Dr. Kolodney never told Mr. Taft that he had revoked his offer to purchase the Tafts's house.

As noted above, Dr. Kolodney revoked his offer to contract on the evening of December 23, 2016. The Tafts state they did not learn of the revocation until Monday, December 26, 2016. However, the Tafts cite to no evidence showing that Dr. Kolodney knew that the Tafts were unaware of the revocation during the parties' text-based communications on December 23, 24, and 25, 2016. Further, the Tafts do not deny that Dr. Kolodney attempted to negotiate a new contract with Mr. Taft on Sunday, December 25, 2016. Because the Tafts have failed to provide any evidence in the record substantiating their claim that Dr. Kolodney knew the Tafts were unaware of his revocation, we cannot say the circuit court erred in granting Dr. Kolodney's motion for summary judgment.

Petitioners' fourth and final assignment of error is that the circuit court erred by failing to require Dr. Kolodney to forfeit his $50,000 earnest money deposit. We find no error. First, Dr. Kolodney did not forfeit his earnest money because the parties formed no contract. A default necessitates an "omission or failure to perform a legal or contractual duty . . . ." *Default*, Black's Law Dictionary (10th ed. 2014). Here, the parties did not form a contract because Dr. Kolodney withdrew his offer to contract before the Tafts attempted to execute the contract. Absent a contract for the purchase of the Tafts's property, there can be no breach of contract. Further, the Tafts point to no evidence showing the parties agreed that Dr. Kolodney would forfeit the earnest money deposit if he withdrew his offer. During his deposition, Mr. Taft testified as follows:

> *Dr. Kolodney's counsel*: Did you have any communication with Dr. Kolodney at all about not ever being able to withdraw his offer to purchase your home?

6

*Mr. Taft:* No.

*Dr. Kolodney's counsel*: It wasn't even on the radar in your negotiations with Dr. Kolodney; is that correct?

*Mr. Taft:* There was no negotiation. He's the one who made the offer.

*Dr. Kolodney's counsel*: Did he ever tell you it was going to be an offer he could not withdraw?

*Mr. Taft:* No.

*Dr. Kolodney's counsel*: Did you ever demand from him an offer he could not withdraw?

*Mr. Taft:* It's documented that I stipulated he put a $50,000 nonrefundable check into the hands of my attorney.

*Dr. Kolodney's counsel*: Let me ask you about that. Why would that $50,000 deposit be nonrefundable?

*Mr. Taft:* Because I wanted to be assured that he was going to purchase the home once I asked for the termination of Martin and Layne.

*Dr. Kolodney's counsel*: So what's your understanding as to whether you would be entitled to get the $50,000 back or to keep it, rather?

*Mr. Taft:* Simply in the wording of the contract.

Based on Mr. Taft's sworn testimony, the parties' contract governs who keeps the earnest money deposit. However, because no contract was formed between the parties, we find that the circuit court did not err in failing to require Dr. Kolodney to forfeit his $50,000 earnest money deposit to the Tafts.

For the foregoing reasons, we affirm the May 10, 2018, order directing that the March 23, 2018, order is a final judgment within the meaning and scope of West Virginia Rule of Civil Procedure 54(b).

Affirmed.

**ISSUED:** September 9, 2019

7

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison