No. 19-0905 – *Home Inspections of VA and WV, LLC v. Hardin*

**FILED**

**November 19, 2020**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman, Justice, dissenting:

This Court's arbitration jurisprudence has dutifully followed the federal model in recent years,[1] a model that mandates such a strong preference for arbitration and allows for such a limited scope of judicial review[2] that, although I have acceded to the mandate of controlling federal law as required by my judicial oath, I have long been concerned that "an average citizen's right to a jury trial in a civil matter is vanishing before our very eyes." *Employee Resource Group, LLC v. Harless*, No. 16-0493, 2017 WL 1371287, at *8 (W. Va. April 13, 2017) (memorandum opinion) (Workman, J., concurring). In the instant case, however, the majority's opinion takes a giant step too far. I cannot agree that the single word arbitration, even capitalized and in bold font as it is, is sufficient to turn the following twenty-seven words into an enforceable arbitration clause:

"**ARBITRATION**: Any dispute concerning the interpretation of this agreement or arising

---

[1] *See*, *e.g.*, *Bayles v. Evans*, 243 W. Va. 31, 842 S.E.2d 235 (2020); *Rent-A-Center, Inc. v. Ellis*, 241 W. Va. 660, 827 S.E.2d 605 (2019); *SWN Production Co., LLC v. Long*, 240 W. Va. 1, 807 S.E.2d 249 (2017).

[2] "In the context of cases affected by the Federal Arbitration Act, we have found that courts are limited to weighing only two questions: does a valid arbitration agreement exist? And do the claims at issue in the case fall within the scope of the arbitration agreement?" *Golden Eagle Res., II, L.L.C. v. Willow Run Energy, L.L.C.*, 242 W. Va. 372, 378, 836 S.E.2d 23, 29 (2019).

from this inspection and report, except for inspection fee payment, shall be resolved informally between the parties."

It is a fundamental principle in West Virginia law that "[a] meeting of the minds of the parties is a *sine qua non* of all contracts." Syl. Pt. 8, *Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W. Va. 421, 781 S.E.2d 198 (2015) (citing Syl. Pt. 1, *Martin v. Ewing,* 112 W.Va. 332, 164 S.E. 859 (1932)). In this case, the notion that there was a meeting of the minds about arbitration is laughable. The parties' agreement, if any, is that "[a]ny dispute . . . shall be resolved informally between the parties[,]" a phrase which could not possibly be more vague. There is no explanation as to how this informal resolution is to be carried out, or what happens if the parties are unable to resolve the dispute between themselves. Left totally unanswered are the following questions, among others: Where are the parties to meet? What are the rules? What law governs? Who pays the costs? Who is the decider in case of an impasse, and who picks him or her? Is his or her decision binding? If not, what's the next step: mediation? litigation? pistols at dawn? Finally, and most critically, who gets to answer these questions?

Compare the so-called arbitration clause upheld by the majority in the instant case to that upheld against a vagueness charge in *Blevins v. Flagstar Bank, F.S.B*., No. 3:12-CV-134, 2013 WL 3365252 (N.D.W. Va. July 3, 2013). At the outset, the court noted

2

that "[t]he title **ARBITRATION**" was offset from the surrounding text." *Id*. at \*10. Significantly, however, that point of similarity with the instant case was the only point of similarity between the two; the district court went on to examine the arbitration clause itself, not just its one-word heading.

> The arbitration provision in the contract also explained the process to the parties. First, the provision explained that any claims arising from the contract or by virtue of alleged representations "shall be settled and finally determined by arbitration and not in a court of law." Second, the provision stated that before "commencing arbitration, the dispute shall first be mediated." This highlighted that there was a difference between mediation and arbitration. Last, the provision states that the parties "specifically acknowledge that they are and shall be bound by arbitration and are barred from initiating any proceeding or action whatsoever in connection with this Agreement." This emphasizes that arbitration is a binding process, and that parties are prohibited from initiating other proceedings or actions. Therefore, the arbitration provision in the contract provides some explanation of the process.

*Id*. at \*11; *see also Lugenbuhl v. City of Gallup*, 302 P.3d 751 (N.M. 2013) (rejecting vagueness claim where arbitration clause specified who selects the mediator, who bears the costs, and that the outcome is final and binding on both parties). Here, in contrast, what explanation of *anything* did the respondent have?

The majority's analysis of this issue consists of nothing more than a logical fallacy known as *ignorantio elenchi*, or irrelevant conclusion. First, the majority cites section five of the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16 (2002), for the proposition that arbitration provisions are not required to contain a method for selection of an arbitrator.

3

Then, the majority cites West Virginia Code § 55-10-13 (2016) for the same proposition, emphasizing the words "[i]f the parties have not agreed on a method" as if those words somehow seal the deal for the sweeping conclusion that follows: "[t]he circuit court was clearly wrong to base its conclusion on the failure of the disputed provision to include specific terms, including how arbitrators will be selected." The logical fallacy is readily apparent: the fact that an arbitration clause does not have to contain a methodology for selection of an arbitrator does not prove that the arbitration clause does not have to contain *any terms at all*. In this regard, the few cases cited by the majority all involve arbitration agreements which, although "not set[ting] forth all the procedural details . . . do clearly evince the parties' intent to submit future disputes to arbitration." *Robertson v. Mount Royal Towers*, 134 So.3d 862, 868 (Ala. 2013).

Here, in contrast, nothing evinces the respondent's intent to submit any disputes to arbitration. The fact that the so-called arbitration provision in this case contains no terms whatsoever is not the only problem with said provision; the twenty-seven words that *are* contained therein are ambiguous. Courts are in general agreement that to be enforceable, an arbitration clause must have "sufficient certainty of terms so that the obligations involved can be determined*." Estate of Decamacho ex rel. Guthrie v. LaSolana Care and Rehab, Inc*., 316 P.3d 607, 610 (Ariz. 2014). In similar vein, this Court has held that "[i]n construing the terms of a contract, we are guided by the common-sense canons of contract interpretation. One such canon teaches that contracts containing unambiguous

4

language must be construed according to their plain and natural meaning." *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 196 W. Va. 97, 101, 468 S.E.2d 712, 716 (1996) (citing *Payne v. Weston*, 195 W. Va. 502, 507, 466 S.E.2d 161, 166 (1985)). We went on in *Fraternal Order of Police* to note that,

> [c]ontract language usually is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken. In note 23 of *Williams* [*v. Precision Coil, Inc.*, 194 W. Va. 52, 65, 459 S.E.2d 329, 342 (1995)], we said: "A contract is ambiguous when it is *reasonably* susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction." (Emphasis added).

196 W. Va. at 101, 468 S.E.2d at 716 (footnote omitted).

In its opinion, the majority concludes that the so-called arbitration provision in the instant case is unambiguous for two reasons: first, because the provision is headed by the word "arbitration," in capital letters and bold font; and second, because the word "informally" would necessarily be understood to denote arbitration, since both the United States Supreme Court and this Court have stated that arbitration is an informal process as compared to litigation.[3] With respect to the first point, although I agree that the word

---

[3] *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) (noting that "the principal advantage of arbitration [is] its informality."); *Cunningham v. LeGrand*, 237 W. Va. 68, 75, 785 S.E.2d 265, 272 (2016) (noting the "more informal nature of arbitration

"arbitration" is certainly important – indeed, in most circumstances, it would be a neon sign advertising what's to come – it is not sufficient, standing alone, to create an enforceable arbitration clause. With respect to the second point, it is pure sophistry to contend that the words "shall be resolved informally between the parties" are unambiguous. To any layman, i.e., someone such as the respondent, who cannot be expected to have read *AT&T Mobility* or *Cunningham*, *see supra* note 2, the words are "reasonably susceptible to more than one meaning in light of the surrounding circumstances[,]" *Fraternal Order of Police*, 196 W. Va. at 101, 468 S.E.2d at 716. To a layman, I believe that the words would reasonably suggest a negotiation, possibly held at the petitioner's office, possibly at the respondent's home. Stretching the words as far as they could reasonably go, again to a layman, the words might suggest a mediation. Under no reasonable construction can it be said that to a layman, the words would clearly convey that resolution of a dispute between the parties could only be effected through the mechanism of binding arbitration, and that no judicial remedies would be available under any circumstances.

The majority's decision today strips the respondent of his right to have his case decided by a jury of his peers in a West Virginia courtroom. Instead, he will have his claims decided in some unknown forum, by some unknown arbitrator, under some

proceedings" due, in part, to "[d]ispensation with the formal rules of evidence and procedure").

unknown rules, at some unknown cost, pursuant to the laws of some unknown jurisdiction, and with no avenue for appeal in the event of an adverse decision.  This isn't just bad law; it's manifestly unfair and unjust to the respondent.  Accordingly, I dissent.