# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**KIMBERLY MAHDAVI,**
**Petitioner Below, Petitioner**

**FILED**

**May 22, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 22-ICA-255**      (Fam. Ct. of Monongalia Cnty. No. 21-D-42)

**MALEK MAHDAVI,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kimberly D. Mahdavi ("Wife") appeals an order dated October 18, 2022, from the Family Court of Monongalia County, holding her in contempt for "failing to provide information and execute documents necessary to assist the husband with obtaining an Iranian divorce." Respondent Malek M. Mahdavi ("Husband") filed a response. Wife filed a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' oral and written arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for disposition in a memorandum decision. For the reasons set forth below, this case is reversed and remanded for further proceedings consistent with this decision.

The parties were lawfully married in West Virginia on July 12, 1986. The couple subsequently engaged in a second, religious-based marriage ceremony at the Islamic Education Center in Washington, D.C. Wife alleges that the religious-based marriage included a Mahr (or dowry) of 100 gold coins to be paid by Husband in the event of a divorce.[2]

On July 1, 2022, the family court entered an Agreed Final Divorce Decree ("Divorce Decree") which incorporated certain terms of a Final Settlement Agreement ("Settlement Agreement") signed by both parties on June 30, 2022. The Settlement Agreement,

---

[1] Wife is represented by Amber U. Sellaro, Esq. and Matthew T. Thorn, Esq. Husband is represented by David J. Straface, Esq. and Chad C. Groome, Esq.

[2] Husband does not dispute that a 100 gold coin obligation existed pursuant to the religious-based marriage.

1

negotiated between experienced counsel for the parties, comprehensively addressed equitable distribution through cash payments and the division of real property, personal property, business entities, vehicles, and various investment, retirement, and banking accounts, along with debts of the parties. The Settlement Agreement also dealt with alimony (with a specific waiver of alimony payments after July 31, 2022) and specified that Wife's claim for attorney fees and costs "has been included in the equitable distribution payment described above."

The Settlement Agreement also contains the following obligation on the part of Wife: "The Wife shall provide information and execute documents necessary to assist the Husband with obtaining an Iranian divorce." Neither the Settlement Agreement nor the Divorce Decree specifically mention 100 gold coins, Mahr, or any claim (or waiver of claims) associated with the religious-based marriage.

According to the record, for Husband to obtain a religious-based divorce, it was necessary to obtain Wife's Iranian passport, a specific Iranian national identification document, and an Islamic Education Center power of attorney signed and notarized by Wife. The power of attorney form provided to Wife by Husband for this purpose states that Wife gives "all needed power, rights[,] and authority" to a named individual associated with the Islamic Education Center "to represent me for all related matters needed to perform my religious-based divorce" from Husband. The blank power of attorney form provided by Husband also contains preprinted lines, to be completed by the principal signing the power of attorney, introduced by the phrase "[i]f you have claims please explain."

Wife filled in the pre-printed power of attorney form, handwriting her name, birthdate, and father's name. She signed and notarized the form. Under the claim section space provided conspicuously on the form itself, she handwrote "100 gold coins promised in my dowry." Husband objected to Wife's claim for the gold coins. Moreover, Wife had not located and did not provide her Iranian passport or the national identification document. Husband instituted a contempt proceeding which is subject to this appeal.

During the contempt hearing before the family court, Husband argued that Wife was required by the terms of Settlement Agreement to furnish him the Iranian passport, national identification, and a signed power of attorney without any claims whatsoever. With respect to the Iranian Passport and national identification, Wife claimed that she did not have the documents, and that she needed assistance from Husband to obtain them. With respect to the power attorney, Wife argued that she never agreed in the Settlement Agreement to forgo a claim to the gold coins in the religious-based divorce proceeding. Moreover, Wife argued that the family court did not have jurisdiction to restrict her ability to file a claim in the religious-based divorce.

2

Husband countered that the Mahr was "never discussed or talked about" during the settlement negotiations, that Wife was not entitled to the gold coins because they were not addressed in the Settlement Agreement, and that Wife knew when she made a claim for the *Mahr* in the space provided in the power of attorney form provided to her that Husband "could not get the Iranian divorce."

The family court ruled in favor of Husband. The Contempt Order finds that "the Settlement Agreement purports to be a global agreement regarding everything mentioned therein, and it mentions the Iranian divorce and that [Wife] was to cooperate to allow [Husband] to have the Iranian divorce, thus anything that is not referred to therein would be waived." The order provides Wife sixty days to provide Husband her passport, her national identification document, and the power of attorney form "without any additions or claim inserted therein."

The parties agree that after the contempt hearing, Wife provided Husband her Iranian passport and national identification document. However, Wife maintains that she is entitled to make a claim for the gold coins in the religious-based divorce and for that reason filed her appeal to this Court.

Our standard of review for family court orders is well established.

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, No. 22-ICA-2, ___W. Va. ___, ____, ___S.E.2d ___, ___, 2022 WL 17098574 at * 3 (Ct. App. Nov. 18, 2022); *accord* W. Va. Code §51-2A-14(c) (2005) (specifying standards for appellate review of family court orders).

Interpreting contract language is a question of law, freely reviewable by this Court *de novo,* unless the lower court determines that an agreement is ambiguous, and construes an agreement based on extrinsic evidence, such as the parties' intent, in which case the standard of review is clearly erroneous. *Ware v. Ware*, 224 W. Va. 599, 603–04, 687 S.E.2d 382, 386–87 (2009); *Fraternal Ord. of Police, Lodge No. 69 v. City of Fairmont*, 196 W. Va. 97, 100, 468 S.E.2d 712, 715 (1996).

The Settlement Agreement states that "the parties desire to enter into an agreement resolving all of their outstanding issues regarding their marital property and debt distribution and the Wife's claim for spousal support and attorney fees." The sole mention of the religious-based marriage in the Settlement Agreement is: "The Wife shall provide information and execute documents necessary to assist the Husband with obtaining an

3

Iranian divorce." The Settlement Agreement makes no mention of claims that may be asserted in the religious-based marriage.

The Settlement Agreement identifies specific releases, waivers, indemnifications, and hold-harmless covenants attributable to specified properties and business interests. Specific waivers of claims are expressly provided concerning rights to retirement, investment, and banking accounts. Specific release language is provided concerning claims for alimony, attorney fees, and court costs. The Settlement Agreement does not contain a release, waiver, or hold-harmless covenant by the parties concerning other claims, generally.

In addition, the Divorce Decree makes specific findings of fact and conclusions of law concerning the Settlement Agreement in connection with the parties' resolution of claims for equitable distribution, alimony, and attorney fees and costs, all of which were expressly ratified and affirmed by the circuit court. No similar express findings, conclusion, or ratification are made in the Divorce Decree regarding the Settlement Agreement's lone sentence concerning Wife's obligation concerning a separate, religious-based divorce proceeding.

Wife argues that she complied with the terms of the Settlement Agreement by providing information and executing all documents necessary to assist Husband with obtaining an Iranian divorce. She argues that she did not agree to forgo or waive Mahr in the religious-based divorce when she signed the Settlement Agreement and that pursuit of her claim to Mahr under a separate, religious-based marriage and divorce proceeding is not a contemptuous act to the family court's order.

Husband directs this Court to cases from other states' appellate courts to characterize and provide a legal framework for determining parties' rights under the religious-based marriage and Mahr. These cases analogize such arrangements to civil prenuptial agreements and apply a doctrine of "neutral principles of law" when parties assert or defend against a Mahr claim in civil courts. However, in the case *sub judice*, Wife did not assert rights to enforce rights to Mahr before the family court, so a discussion of these cases is unnecessary.

As a matter of West Virginia contract law, parties may expressly or implicitly waive a contract right. *See Parsons v. Halliburton Energy Servs.*, 237 W. Va. 138, 785 S.E.2d 844 (2016). The Settlement Agreement itself does not expressly waive claims that may be pursued outside the West Virginia Domestic Relations Act. Waivers, indemnities, and hold harmless provisions incorporated in the Settlement Agreement relate solely to equitable distribution of marital property, spousal support, attorney fees, and court costs cognizable under Chapter 48 and Article 2A of Chapter 51 of the West Virginia Code.

4

The express promise to provide information and execute documents necessary to assist Husband with obtaining an Iranian divorce does not automatically carry with it the obligation to waive claims associated with that religious-based divorce proceeding in the facts before us. The necessary form document provided by Husband to Wife for this purpose expressly contemplates that claims may be asserted in the religious-based divorce. Husband made no effort to pre-fill the form to negate assertion of such claims. Wife merely filled in various blanks in the form provided. Husband points to no additional evidence that Wife acted inconsistently with asserting the claim. Indeed, Husband acknowledged that Mahr was not discussed during the settlement process.

After review, we find that the family court erred when it found Wife in contempt for making a claim for the 100 gold coins on the space provided for that purpose on the power of attorney form provided by Husband. The Settlement Agreement presented to the family court does not prevent Wife from completing the power of attorney as she did. Wife provided information and executed documents necessary to assist Husband with obtaining an Iranian divorce in compliance with the Settlement Agreement. Presumably, Husband is not prohibited from asserting any defense or counterclaim in that separate religious-based divorce proceeding. But these matters were not part of the Divorce Decree or the Settlement Agreement and therefore were not properly before the family court in the contempt action below.

Accordingly, this Court finds that the family court erred when it prohibited Wife from asserting a claim in a separate, religious-based divorce proceeding. As a result, the family court's October 18, 2022, Contempt Order is reversed.

Reversed.

**ISSUED:** May 22, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

5